IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Manuel A. Marin, | ) | Case No. 2:19-cv-01270-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Randall Williams, Lieutenant Grant, | ) | |
| Major Clark, RHU Unit Manager/Captain, | ) | |
| Ms. Birch, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court upon Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment. ECF No. 55. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), (D.S.C.), this matter was referred to United States Magistrate Judge Mary Gordon Baker for pre-trial proceedings and a Report and Recommendation ("Report"). On February 28, 2020, the Magistrate Judge issued a Report recommending that the Motion be granted. ECF No. 82. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed Objections, and Defendants filed a Reply. ECF Nos. 92, 100.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The

Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. See *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## DISCUSSION

Plaintiff brings the present action pursuant to 42 U.S.C. § 1983 alleging that Defendants failed to protect him, were deliberately indifferent to his serious medical needs, and used excessive force against him. The Magistrate Judge provides a thorough recitation of the relevant facts and the applicable law which the Court incorporates by reference, except as noted below. As stated above, the Magistrate Judge recommends that the Motion for Summary Judgment[1] be granted.

---

[1] The Magistrate Judge recommends that the "Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment be granted"; however, the Magistrate Judge recites only the motion for summary judgment standard and refers to documents outside the pleadings in her analysis. Accordingly, it appears to the Court that the Magistrate Judge has construed the Motion as one for summary judgment and will do likewise.

2

***Failure to Protect***

Plaintiff alleges that Defendants failed to protect him by declining to place him in protective custody. Plaintiff requested to be placed in protective custody because he "feared for his life" and had been "threatened that [he would] be killed [in] the yard." ECF No. 55-13 at 3. This request was most likely denied as overly general and non-specific. ECF No. 55-6 at 1. Thereafter, Plaintiff engaged in self-injurious behavior.

The Magistrate Judge recommends granting Defendants' Motion for Summary Judgment as to this claim because Plaintiff's allegation that Defendants failed to give him a hearing on his request for protective custody fails to rise to the level of a constitutional violation and because none of the Defendants evaluated Plaintiff's request for protective custody. ECF No. 82 at 6–9. Plaintiff filed several objections to this recommendation.

In his objections, Plaintiff reiterates that his claim "is not merely that Defendants subjected him to harm when they did not place him in protective custody, but that he was denied the opportunity to have a 'hearing' by the (I.P.C.) Institutional Protective Custody 'Committee.'" ECF No. 92 at 3. He contends that Defendants could not know whether there was a valid or viable threat to his safety without a hearing and that the denial of such is evidence of deliberate indifference. *Id.* at 4. Plaintiff states that failing to provide him with a hearing violated South Carolina Department of Corrections policies and the Eighth Amendment.

The Eighth Amendment's prohibition on "cruel and unusual punishments" imposes certain basic duties on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). These include maintaining humane conditions of confinement, including the provision of

adequate medical care and, relevant to this case, "reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks omitted). Corrections officers have "a duty to protect prisoners from violence at the hands of other prisoners," for "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 833, 834 (internal quotation marks and alterations omitted). However, "not every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (internal quotation marks omitted).

A plaintiff must satisfy a two-part test; the test consists of both an objective and a subjective inquiry for liability to attach. First, the inmate "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury," or a substantial risk thereof. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014) (internal quotation marks omitted); *see Farmer*, 511 U.S. at 834. This objective inquiry "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Second, an inmate must show that the prison official had a "sufficiently culpable state of mind," which, in this context, consists of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *see Odom v. SCDC*, 349 F.3d 765, 770 (4th Cir. 2003). This subjective inquiry requires "evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser*, 772

4

F.3d at 347. The defendant must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. An inmate can, however, prove an official's actual knowledge of a substantial risk "in the usual ways, including inference from circumstantial evidence." *Id.* at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

"In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure to protect claim. *Id.* at 845; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (concluding that an officer who responds reasonably to a danger facing an inmate is not liable under a deliberate indifference standard, even if the officer could have taken additional precautions but did not). This standard reflects prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Farmer*, 511 U.S. at 845.

With respect to the Magistrate Judge's recitation of the law that inmates are not entitled to be housed in a particular location, Plaintiff states that he "was not asking to be housed at the Hilton" but was asking to be placed in protective custody out of necessity. ECF No. 92 at 5. However, whether it is protective custody or some other wing of the prison, as stated by the Magistrate Judge, Plaintiff is not entitled to a particular housing status based on his own conclusory assertion that it is necessary.

5

Further, even assuming that Defendants failed to follow South Carolina Department of Corrections ("SCDC") policy in evaluating his request for protective custody, there is no evidence that Defendants violated Plaintiff's constitutional rights by doing so. *See Wiggins v. Bush*, C/A No. 3:08-cv-3452-RBH-JRM, 2009 WL 6314994, at *1 (D.S.C. Dec. 15, 2009), *adopted by*, C/A No. 3:08-cv-3452-RBH, 2010 WL 1254878 (D.S.C. Mar. 24, 2010) ("An inmate does not have a constitutional right to be confined in a particular location."); s*ee also Evans v. McCall*, C/A No. 8:16-cv-1112-MBS-JDA, 2017 WL 1190879, at *6 (D.S.C. Mar. 31, 2017) (granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claims where plaintiff alleged that prison officials knew about the threats against his life and placed him in general population nonetheless). Accordingly, the Court finds that there is insufficient evidence to establish that Defendants violated Plaintiff's constitutional rights in a "sufficiently serious" manner. *Farmer*, 511 U.S. at 833 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

Plaintiff also argues that his claim is not merely that he would not have harmed himself if he had been placed in protective custody but that Defendants were deliberately indifferent to his health and safety by "dragging him into Ashley Dorm, which is well known, and documentally established to rank among the top three most violent dorms in SCDC; dragging him into a hopeless, and helpless situation, where death awaited him, he would never have harmed himself." ECF No. 92 at 3. However, Plaintiff's statement that denying him a hearing violates his rights under the Eighth Amendment is insufficient to make it so. Despite Plaintiff's attempts to categorize it otherwise, this allegation amounts to the same argument analyzed by the Magistrate Judge—that Defendants

6

failed to protect him by declining to place him in protective custody, which this Court has already addressed.

Plaintiff also objects to the Magistrate Judge's statement that none of the Defendants evaluated Plaintiff's request for protective custody. ECF No. 92 at 7–8. Plaintiff does not appear to dispute this as a fact but instead refers to his Motion to Amend the Complaint, which was denied by the Magistrate Judge and by the undersigned.[2] As Plaintiff's Motion to Amend the Complaint has been denied and Plaintiff has not alleged any facts to contradict the Magistrate Judge's analysis, any objection Plaintiff intended to make with respect to whether the named Defendants were responsible for evaluating his request to be placed in protective custody is overruled.

Plaintiff next takes issue with the Magistrate Judge's statement that the officers escorting him to his cell told him that they didn't know anything about the status of his protective custody request. ECF No. 92 at 8. Plaintiff contends that this is a misstatement of the facts. He asserts that Defendants informed him they didn't know anything about his pre-hearing detention form and that the officers escorting him to his cell were different officers from Defendants. He contends that Defendants were aware that he was concerned for his safety because he told them "numerous times: 'I fear for my life, I need to go on P.C.'" *Id.* at 8–9. The fact that he generally stated he was afraid and needed to be placed in protective custody without more is insufficient to establish that Defendants

---

[2] On June 29, 2020, Plaintiff appealed this decision to the Fourth Circuit. ECF No. 84. On October 23, 2020, the Fourth Circuit dismissed the appeal as the order on the motion to amend was not a final and appealable order. ECF No. 103.

were aware of facts from which the inference could be drawn that Plaintiff was at a substantial risk of harm or that Defendants ever drew that inference. *See Wynn v. Perry*, C/A No. 3:14-cv-625-FDW, 2018 WL 1077321, at *27 (W.D.N.C. Feb. 27, 2018) (holding that the plaintiff's report of "rising tension" between himself and a known gang member was insufficient to show that the defendants knew of and disregarded a substantial risk of harm to the plaintiff); *Drayton v. Cohen*, C/A No. 2:10-cv-3171-TMC, 2012 WL 666839 (D.S.C. Feb. 29, 2012), *aff'd*, 474 F. App'x 991, at *4, *7 (4th Cir. 2012) (holding that "[t]he facts alleged by Plaintiff fall short of the requisite standard because his requests to staff expressed no more than a generalized concern that he would be drawn into a confrontation with [his cellmate] based upon Plaintiff's disdain for [the cellmate's] behavior" where the plaintiff requested his cellmate be "moved to another cell, in order to prevent the potential physical confrontation that is sure to come"); *Sutton v. Johnson*, C/A No. 7:10-cv-00070, 2010 WL 1813791, at *2 (W.D. Va. Apr. 30, 2010) (holding that the plaintiff's request to be removed from a cell with an inmate who was in a gang known for violence and whose recent segregation sentence was for unidentified violence did not put the defendant on notice that the gang member posed a specific risk of harm to the plaintiff). Accordingly, summary judgment is appropriate with respect to Plaintiff's claim that Defendants failed to protect him.

***Deliberate Indifference to Serious Medical Needs***

As explained by the Magistrate Judge, Defendant Birch is the only medical Defendant in this action; accordingly, the Court will discuss Plaintiff's claim of deliberate

indifference to serious medical needs as being brought against her.[3]  The Magistrate Judge explains that Defendant Birch assessed Plaintiff after he attempted to self-harm. Plaintiff contends that Defendant Birch was deliberately indifferent by failing to treat his wound, failing to allow him to wash off the chemical munitions, and failing to place him on crisis intervention.  The Magistrate Judge recommends granting Defendants' Motion as to this claim.  She determined that Plaintiff was seen by medical personnel following the incident and that he was uncooperative when Defendant Birch attempted to evaluate him. Plaintiff puts forward several objections to this portion of the Report.

The Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)).  To establish deliberate indifference to serious medical needs, a prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, 452 F. App'x 202, 204 (4th Cir. 2011).  Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  A defendant acts recklessly by disregarding a substantial risk of

---

[3] The Court will briefly discuss any claim against the remaining Defendants at the end of this section.

danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  The Fourth Circuit has determined that "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

With respect to the Magistrate Judge's finding that Plaintiff failed to communicate with Defendant Birch when she came to evaluate him, Plaintiff argues that "[i]t is sophomoric to think that someone who has just been gassed (sprayed) with chemical munitions twice; dragged hogtie style with hands cuffed behind his back, and ankles shackled . . . being faced with a hopeless and helpless situation, could have an intelligible conversation" and that she should have known that individuals in distress are often uncommunicative.  However, none of these assertions are denials that he failed to communicate with Defendant Birch when she attempted to evaluate him or explain what more she was constitutionally required to do for Plaintiff.  The evidence shows that she attempted to assess Plaintiff, reviewed his medical records, and requested that the mental health team follow up.  ECF Nos. 55-7 at 1–2; 55-10 at 2.  Accordingly, Plaintiff's allegations are not supported by the evidence in the record.

With respect to the Magistrate Judge's statement that Plaintiff was called for a follow-up medical screening on May 16, 2017, but refused to leave his cell, Plaintiff states that this fact affirms "his concerns for protective custody and corroborates Plaintiff's claim."  ECF No. 92 at 14.  Again, Plaintiff does not deny that he refused to cooperate when medical care was offered, but instead attempts to link the refusal on his part to his

claim that Defendants failed to protect him by not placing him in protective custody. As summary judgment has been granted as to that claim for the reasons previously stated, this objection to the Magistrate Judge's analysis is likewise overruled.

Plaintiff spends some time discussing the Magistrate Judge's choice of words with respect to the injury he sustained to his wrist. ECF No. 92 at 15. Generally, he seems to contest what he views as a minimization of his injury. However, he does not contend that more than a band aid was required to treat his injury, which was noted by the Magistrate Judge. Accordingly, to the extent Plaintiff intends to substantively object to the Magistrate Judge's Report, the remainder of Plaintiff's discussion of the presence of blood on his wrist is overruled.[4]

Plaintiff next discusses the substance of his prior medical records, which are not at issue in this case. He states that the Magistrate Judge inserted her unsubstantiated opinion by stating that he had no apparent history of self-harm and inquires as to how he was noted to be high-functioning but was also involuntarily committed. ECF No. 92 at 15–16. The Court notes that all of these statements by the Magistrate Judge are supported by the evidence. ECF No. 55-10 at 2–4. There is no allegation that Defendant Birch wrote these records or that she altered them. There is evidence that she reviewed

---

[4] The Court notes that Plaintiff also objects to several of the specific words used by the Magistrate Judge including "stabbed," "negligent," and "neglected." ECF No. 92 at 10. Upon de novo review of the Report, applicable law, and the record in this case, the Court finds that these words used by the Magistrate Judge are not misleading or significant in the evaluation of Plaintiff's claims.

them in attempting to evaluate Plaintiff. See ECF No. 55-7. Accordingly, this objection is overruled.

Plaintiff further argues that Defendant Birch was not there to assess his physical injuries, she was there to assess his mental state. He states that it was her responsibility "to make sure that Plaintiff did not intend to further harm himself, and it was her duty to insure this by placing the Plaintiff on [crisis intervention]." ECF No. 92 at 17. As explained by the Magistrate Judge, Plaintiff is entitled to receive adequate medical care, not the treatment of his choice. Jackson, 846 F.2d at 817. Plaintiff's conclusory allegations are insufficient to contradict the evidence in the record, which demonstrates that Defendant Birch provided adequate medical care.

Finally, with respect to Defendants Grant, Clark, Brightharp, and Williams, Plaintiff states that "the above mentioned Defendants were indifferent to Defendant Birch's misconduct. ECF No. 92 at 18. As explained by the Magistrate Judge, the Fourth Circuit has held that in order to establish liability under § 1983 against a non-medical prison official, like these Defendants, in a case concerning the denial of medical treatment, an inmate must show that the official (1) was actually personally involved with the denial of the medical treatment, (2) deliberately interfered with a prison physician's care of the inmate, or (3) implicitly authorized or was indifferent to the constitutional violations of the prison doctor. Miltier, 896 F.2d at 851. Plaintiff makes no such allegation that Defendants Grant, Clark, Brightharp, and Williams were personally involved in any aspect of his

12

medical treatment other than transporting him to medical.[5]  See ECF No. 16-1. Accordingly, summary judgment is granted as to Plaintiff's deliberate indifference to serious medical needs claim.[6]

*Excessive Force*

Plaintiff alleges that Defendants used excessive force against him when moving him from his cell and in trying to make him comply with their directives.  Specifically, he contends that he was sprayed with chemical munitions, tightly handcuffed, and carried "hog-tied style for 10 minutes."  ECF No. 16-1 at 9.  The Magistrate Judge recommends that Defendants' Motion for Summary Judgment be granted as to Plaintiff's claim for excessive force.  Plaintiff filed several objections to this recommendation.

---

[5] In his objections, Plaintiff states that these Defendants "were indifferent to Defendant Birch's misconduct."  ECF No. 92 at 18.  Plaintiff also fails to provide any support for this assertion beyond his own conclusory allegations. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989) (holding that conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion).

[6] In his discussion of his excessive force claim, Plaintiff argues that he was not properly treated after being sprayed with chemical munitions.  ECF No. 92 at 19.  This is properly construed as a claim that Defendants were deliberately indifferent to his serious medical needs.  As explained by the Magistrate Judge, Plaintiff was treated by two nurses before Defendant Birch attempted to evaluate him.  Nurse Mauney noted that Plaintiff had "scratched [his] inner left wrist with [a] paper clip.  Multiple pinpoint lines.  No active bleeding.  No treatment needed."  ECF No. 55-10 at 3.  Nurse Brandfass also evaluated Plaintiff and noted that there was a "report that inmate was gassed, no sign of resp[iratory] distress."  *Id.*  Moreover, Plaintiff acknowledges that Defendant Birch was responsible for his mental health needs, not his other injuries.  ECF No. 92 at 17.  Accordingly, Plaintiff's allegations fail to create a genuine issue of material fact that Defendants acted with a sufficiently culpable state of mind; thus, his objections are overruled as to this argument.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To recover on an Eighth Amendment excessive force claim, a plaintiff must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Thus, courts must analyze both subjective and objective components. "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Iko*, 535 F.3d at 239). The Fourth Circuit has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Id.* (quoting *Iko*, 535 F.3d at 239); *see also Whitley Albers*, 475 U.S. 312, 321 (1986). To establish the objective component, a plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation

14

regardless of how significant a plaintiff's injury may be. *Id.* at 9; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Most of Plaintiff's objections appear to be the result of one detail inadvertently omitted by the Magistrate Judge in reciting the sequence of events. The Magistrate Judge's recitation of facts includes the following:

> Plaintiff states that Defendant Grant then sprayed him with chemical munitions before he was stripped and placed on a "metal detector chair."
>
> Later, Defendants Grant and Clark returned to Plaintiff's cell with additional officers to bring him to the yard. They instructed Plaintiff to get dressed. When Plaintiff refused to dress, the officers used force to dress him and then carried him to the medical facility. There, Defendant Clark requested that a mental health professional evaluate Plaintiff.

ECF No. 82 at 2 (citations omitted).

According to Plaintiff's Amended Complaint, Plaintiff requested to be placed in protective custody; he began to cut at his wrists with a staple when that request was denied. Plaintiff was sprayed with chemical munitions and was then stripped down to his boxers and made to sit in a "metal detector chair." He was then returned to the holding cell. Defendants Clark and Grant directed Plaintiff to get dressed, Plaintiff refused, and Defendants Clark and Grant forcefully dressed Plaintiff, handcuffed his hands behind his back, shackled his feet, and carried him "hog-tied style" to a medical facility. ECF No. 16-1 at 4–6.

Defendants' Motion and accompanying documentation provide some additional details. When Plaintiff was attempting to self-harm with the staple, officers attempted to

retrieve the staple from him prior to administering chemical munitions; after deploying one burst of chemical munitions,[7] Plaintiff was put in restraints.  He was placed in a chair to prevent further self-injury, and Plaintiff was evaluated by Nurse Mauney.  Plaintiff was then placed back in a holding cell.  A few hours later, Plaintiff refused to follow verbal commands to go to his assigned housing unit.  Defendant Grant called for a cell movement team to assist in moving Plaintiff.  Plaintiff was given several verbal instructions to get dressed and was warned that failure to comply would result in result in the deployment of chemical munitions.  One burst of chemical munitions was administered.[8]  Plaintiff continued to resist as the officers dressed him and moved him to medical.  He was evaluated for injuries.  ECF Nos. 55-4; 55-8; 55-11 through 55-17.

In his own version of events, Plaintiff acknowledges that he was placed on a chair, then led back to a holding cell,[9] and then directed to get dressed; however, because the Magistrate Judge omitted that he was led to the holding cell, Plaintiff now attempts to reframe the facts of this case.  In his objections, Plaintiff states repeatedly that the second burst of chemical munitions occurred while he was "restrained" and "placed on a metal detector chair."  *See, e.g.*, ECF No. 92 at 18, 20.  Upon de novo review of the record, it is clear that this version of events is inaccurate.  Accordingly, Plaintiff's objection that he

---

[7] The burst consisted of 22 grams of munitions.  ECF No. 55-14 at 4.

[8] The burst consisted of 5 grams of munitions.  ECF No. 55-14 at 5.

[9] The Court again notes that the evidence demonstrates that Plaintiff was also given medical attention between the incidents.  ECF No. 55-10.

was subjected to excessive force because he was still shackled and placed in a chair when the second burst of chemical munitions was administered is overruled.[10]

In the present action, Plaintiff admits to attempting to harm himself and to refusing Defendants' orders. ECF No. 16-1 at 4–6. Regarding the first burst of munitions, Defendants used force to protect Plaintiff from causing himself injury and only applied force after attempting to prevent Plaintiff from harming himself in another manner.[11] With respect to the second burst of munitions, Defendants used force only after giving Plaintiff multiple verbal warnings, which Plaintiff ignored while continuing to resist Defendants. *Id*. With respect to the relationship between the need and the amount of force that was used, the Court finds that one burst of chemical munitions was used in each incident and Plaintiff was restrained only when necessary to protect him from himself or transport him to the medical facility.

In his objections, Plaintiff argues that he suffered injuries from being carried to medical and the tightness of the handcuffs. While Plaintiff is correct that he is not required to show a serious or permanent injury to successfully pursue a claim for excessive force, he must proffer some evidence to support his assertion that Defendants had a sufficiently

---

[10] Moreover, the evidence establishes that Plaintiff was uncooperative to verbal commands and that one burst of chemical munitions was administered only after Plaintiff had been given multiple verbal instructions and warnings. ECF Nos. 55-4; 55-8.

[11] The Court has included a discussion of the first burst of chemical munitions; however, in his objections Plaintiff may concede that the first burst was not excessively forceful. *See* ECF No. 92 at 18–19 ("The second burst of chemical munitions was 'excessive force' . . . . Disobeying a direct order is a minor offense in SCDC and does not require the use of chemical munitions unless the directive is to prevent self-harm (as the first burst of chemical munitions).").

17

culpable state of mind.[12]  In the present action, the evidence of record demonstrates that Defendants used force in a good-faith effort to restore order and did not act with a malicious or sadistic intent.  Plaintiff has provided no evidence to the contrary beyond his own conclusory statements regarding Defendants' state of mind.  *See Ross*, 759 F.2d at 365 (4th Cir. 1985).  Accordingly, summary judgment is appropriate with respect to Plaintiff's excessive force claim.[13]

**Eleventh Amendment Immunity**

The Magistrate Judge recommends that the Court grant Defendants' Motion as to Plaintiff's claims against Defendants in their official capacities pursuant to the Eleventh Amendment.  In his objections, Plaintiff states that he "is not suing Defendants in their official capacity, but in their individual capacity."  ECF No. 92 at 22.  Accordingly, no party

---

[12] The Court notes that Plaintiff does not allege that he suffered any lasting effects or needed any serious medical treatment as a result of the use of chemical munitions or the use of handcuffs.

[13] Plaintiff takes issue with the Magistrate Judge's statement that "Plaintiff admits that Defendants did not have a sufficiently culpable state of mind.  In his response in opposition to Defendants' motion, he states that Defendants did not maliciously use force against him."  ECF No. 82 at 16.  In his objections, Plaintiff states that "[n]otably, there are no quotation marks on this last paragraph.  What Plaintiff stated in his opposition to Defendant's motion was that: 'had Defendants placed Plaintiff on Crisis Intervention, there would not have been any need for any force at all.'"  ECF No. 92 at 22.  Upon review of Plaintiff's response to the Motion for Summary Judgment, Plaintiff stated that his "complaint was <u>not</u> that the force inflicted was applied maliciously, Plaintiff's complaint was that, had Defendants not been '<u>deliberately indifferent</u>' by denying him the opportunity to a Protective Custody Hearing, and refusing to place him on Crisis Intervention (C.I.), there would have been <u>no</u> need for '<u>any force at all</u>.'"  ECF No. 64 at 11.  Regardless of whether Plaintiff has, in fact, agreed that Defendants did not apply force maliciously, the Court has found that Plaintiff has failed to create a genuine issue of material fact as to this element of his claim.

has filed objections to this portion of the Report; upon review for clear error, the Court agrees with the recommendation of the Magistrate Judge.

***Qualified Immunity***

The Magistrate Judge recommends that Defendants are entitled to qualified immunity. The Court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.*

To determine whether qualified immunity applies, a district court must decide whether a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Based on the foregoing, the Court adopts the recommendation of the Magistrate Judge.  Defendants' Motion for Summary Judgment [55] is **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

October 27, 2020
Spartanburg, South Carolina

20